UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| BARBARA ANN THORNTON, | ) | Civil Action No.: 4:20-cv-00073-TER |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | **ORDER** |
| ANDREW M. SAUL, | ) | |
| Commissioner of Social Security; | ) | |
| Defendant. | ) | |
| _____ | ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended,

42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of

Social Security, denying Plaintiff's claim for disability insurance benefits (DIB).  The only issues

before the Court are whether the findings of fact are supported by substantial evidence and whether

proper legal standards have been applied.  This action is proceeding before the undersigned by

consent pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. Proc. R. 73.

## I. RELEVANT BACKGROUND

### A.     Procedural History

Plaintiff filed an application for DIB on January 3, 2017, alleging inability to work since July

30, 2016.  (Tr. 15).  Her claims were denied initially and upon reconsideration.  Thereafter, Plaintiff

filed a request for a hearing.  A hearing was held on September 7, 2018, at which time, a vocational

expert (VE) and Plaintiff  testified. (Tr. 15).  The Administrative Law Judge (ALJ) issued an

unfavorable decision on January 10, 2019, finding that Plaintiff was not disabled within the meaning

of the Act.  (Tr. 15-25).  Plaintiff filed a request for review of the ALJ's decision, which the Appeals

Council denied on November 7, 2019, making the ALJ's decision the Commissioner's final decision.

Plaintiff filed this action on January 7, 2020.  (ECF No. 1).

**B.     Plaintiff's Background**

Plaintiff was born on November 4, 1975, and was forty-one years old at the alleged onset date. (Tr. 62). Plaintiff alleges disability originally due to back problem and spinal cord lesions. (Tr. 63). Only relevant records will be summarized under pertinent issue headings.

**C.     The ALJ's Decision**

In the decision of January 10, 2019, the ALJ made the following findings of fact and conclusions of law (Tr. 15-25):

1.     The claimant meets the insured status requirements of the Social Security Act through June 30, 2020.

2.     The claimant has not engaged in substantial gainful activity since July 30, 2016, the alleged onset date (20 CFR 404.1571 *et seq.*).

3.     The claimant has the following severe impairments: Spine Disorder, Neuropathy, Obesity, and Complex Regional Pain Syndrome (20 CFR 404.1520(c)).

4.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.     After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) with some non-exertional limitations. The claimant is capable of lifting and/or carrying 10 pounds occasionally and less than 10 pounds frequently. She is capable of standing and/or walking at least 2 hours in an 8-hour workday and sitting about 6 hours in an 8-hour workday. She can never climb ladders, ropes and scaffolds, and occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She must avoid concentrated exposure to workplace hazards.

6.     The claimant is capable of performing past relevant work as a Dispatcher. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7.     The claimant has not been under a disability, as defined in the Social Security Act, from July 30, 2016, through the date of this decision (20 CFR 404.1520(f)).

2

## II. DISCUSSION

Plaintiff argues the ALJ erred in the Listing 1.04A analysis. Plaintiff argues the ALJ failed to properly assess the opinions of Dr. Wilson. Defendant argues the ALJ supported findings with substantial evidence.

### A.    LEGAL FRAMEWORK

#### 1.    The Commissioner's Determination–of–Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months. 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such impairment prevents claimant from performing PRW;[2] and (5)

_____

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any

whether the impairment prevents him from doing SGA.  *See* 20 C.F.R. § 404.1520.  These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis.  If a decision regarding disability may be made at any step, no further inquiry is necessary.  20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work.  See 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982).  The claimant bears the burden of establishing his inability to work within the meaning of the Act.  42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy.  To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW.  *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002).  If the

---

of the Listed impairments for at least one year, he will be found disabled without further assessment.  20 C.F.R. § 404.1520(a)(4)(iii).  To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria."  20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

### 2.    The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases *de novo* or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir.1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

B.     **ANALYSIS**

**Listing 1.04A**

The "Listings," found at 20 C.F.R. part 404, subpart P, appendix 1, "is a catalog of various disabilities, which are defined by 'specific medical signs, symptoms, or laboratory test results.'" *Bennett v. Sullivan*, 917 F.2d 157, 160 (4th Cir. 1990) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530, (1990)). A claimant's impairment meets a Listing if "it satisfies all of the criteria of that listing, including any relevant criteria in the introduction, and meets the duration requirement." 20 C.F.R. § 416.925(c)(3)(eff. 6/7/11 to 3/26/17). The only time requirement is that "the evidence must show that your impairment(s) has lasted or can be expected to last for a continuous period of at least 12 months." *Id.* at (c)(4)(emphasis added). "When a claimant satisfies a listing by meeting all its specified medical criteria, he presumably qualifies for benefits. *See Bennett*, 917 F.2d at 160. "If the individual's impairment(s) has the specific medical findings of a listed set of medical findings or findings that are equal in severity and duration to a set of listed findings, the individual is considered to be unable to engage in any gainful activity and, thus, can be found disabled on medical grounds alone." SSR 83-19, 1983 WL 31248, *1.

The impairment medically equals a Listing "if it is at least equal in severity and duration to the criteria of any listed impairment." *Id.* § 416.926(a). If a claimant has a listed impairment, but: 1) does "not exhibit one or more of the findings specified in the particular listing, or" 2) exhibits "all of the findings, but one or more of the findings is not as severe as specified in the listing," the claimant's impairment is medically equivalent to the listing if the claimant has "other findings related to [his or her] impairment that are at least of equal medical significance to the required criteria." 20 C.F.R. § 416.926(b)(1).

6

At step three, to determine whether a claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1, the ALJ must identify the relevant listed impairments and then compare the listing criteria with evidence of claimant's symptoms. *Cook v. Heckler*, 783 F.2d 1168 (4th Cir.1986). In *Cook*, the court held that the ALJ should "have compared each of the listed criteria to the evidence of [the claimant's] symptoms. Without such an explanation, it is simply impossible to tell whether there was substantial evidence to support the determination." *Id.* at 1173.

Plaintiff argues the record shows Plaintiff's impairments caused the required elements to meet Listing 1.04A. (ECF No. 13 at 11). Plaintiff argues the ALJ's "jumbled" recitation of evidence does not accurately show the longitudinal evidence picture. (ECF No. 13 at 11). Further, Plaintiff notes the *Radford* case that there is no requirement that the elements of a Listing have any proximity or simultaneity. (ECF No. 13 at 11).

Listing 1.04A requires:[3]

---

[3] In the Listing analysis, the ALJ here did not analyze or rely on the introductory criteria in Listing 1.00. Defendant does not argue that ineffective ambulation is an element of Listing 1.04A per se but posits post-hoc arguments not addressed by the ALJ that lack of ineffective ambulation undermines Plaintiff's argument that she meets Listing 1.04A. However, Defendant never cites to the Listing 1.00 introductory criteria. Plaintiff's reply brief argues that impaired ambulation is not a requirement of Listing 1.04A. (ECF No. 5 at 3). "District courts in this circuit and in others are split on whether Listing 1.04A encompasses a requirement that a claimant prove ineffective ambulation, and the Fourth Circuit has not explicitly considered this issue." *Gardner v. Colvin*, No. CV 0:15-1123-RBH-PJG, 2016 WL 11396823, at *10 (D.S.C. Apr. 19, 2016), *report and recommendation adopted in part*, 2016 WL 4445375 (D.S.C. Aug. 24, 2016)(citing *Soles v. Colvin*, No. 1:13CV491, 2015 WL 7454607, at *7 (M.D.N.C. Nov. 23, 2015) (Memorandum Opinion and Recommendation) (discussing the split). Listing 1.00B2b defines the inability to ambulate effectively as: "an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." 20 C.F.R.

1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

20 C.F.R. § Pt. 404, Subpt. P, App. 1.

The ALJ found Listing 1.04A was not met because exam findings meeting the elements were short term and the record as a whole was inconsistent with the Listing because the clinical evidence was overly mixed:

The claimant's spine impairment corresponds with listing 1.04 (spine disorders).
...
As for whether the claimant meets listing 1.04, I decided that this is not the case. On the one hand, the file contains a great deal of evidence about spine problems, including diagnostic imaging and clinical abnormalities that match pieces of the 1.04 elements (See e.g. Exhibits 2F/35-36 (including signs of weakness, and sensation loss)). However, the record as a whole is inconsistent with the listing. For example, the clinical evidence is overly mixed. Her medical sources commonly described her as unremarkable in areas like strength, sensation, tone, reflex, gait, independent ambulation, and/or negative straight leg raise test results (See e.g. Exhibits 2F/13, 35-36; 3F/3, 7, 8; 5F/5, 21; 7F/9, 25, 50, 60; l0F/7. Cf Exhibits 8F (containing generally vague and unremarkable clinical findings in the updated, post-operative records); 9F/l ("without any obvious compressive etiology"), 8 (reporting normal NCS/EMG results)). Furthermore, many of the indicated abnormalities correspond with short-term variables like the brief windows of time surrounding ameliorative surgeries (See e.g. Exhibits 2F/35-36; 5F/21. Cf Exhibit 5F/5 (regarding "very successful" Spinal Cord Stimulator (SCS) treatment)). For example, the claimant was given a walker during post-operative convalescence, but the record does not objectively confirm that this device was medically necessary for a continuous period

_____

Part 404, Subpart P, App. 1, Listing 1.00B2b(1). The ALJ here did not make any findings as to the Listing 1.00. introduction The court will not address such in the first instance. On remand, the ALJ is free to address this issue.

of at least 12 months (See e.g. Exhibit 2F/24).

(Tr. 18-19).

"Listing 1.04A says nothing about a claimant's need to show that the symptoms present simultaneously in the claimant or in close proximity to one another." *Radford v. Colvin*, 734 F.3d 288, 294 (4th Cir. 2013). The Fourth Circuit Court of Appeals further elaborated as to Listing 1.04A:

> A claimant need not show that each symptom was present at precisely the same time—i.e., simultaneously—in order to establish the chronic nature of his condition. Nor need a claimant show that the symptoms were present in the claimant in particularly close proximity. As the Commissioner recognizes, "abnormal physical findings may be intermittent," but a claimant may nonetheless prove a chronic condition by showing that he experienced the symptoms "over a period of time," as evidenced by "a record of ongoing management and evaluation." (App.Br.25) (quoting 20 C.F.R. Part 404, Subpart P, 1.00D). To require proximity of findings would read a new requirement into the listing that is unsupported by the text, structure, medical practice, or common sense, and we decline to do so.

*Radford v. Colvin*, 734 F.3d 288, 294 (4th Cir. 2013).

The ALJ's analysis does not comport with published Fourth Circuit case law. There is no requirement for proximity or simultaneity for meeting Listing elements nor is there an exception in the regulations for when the evidence is mixed over time. Further, Listing elements are able to be proved by being intermittent or over a period of time. *Id.*[4]

Plaintiff notes in her reply brief that Defendant interprets the ALJ's use of the term "mixed"

---

[4] As to Defendant's argument that as to the Listings issue the court should review the RFC narrative and read the ALJ's opinion as a whole, the very reasoning and purpose of the Listings is that the inquiry does not proceed further. "The reason for this difference between the listings' level of severity and the statutory standard is that, for adults, the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary. That is, if an adult is not actually working and his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without a determination whether he actually can perform his own prior work or other work." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990); *see also Marcus v. Bowen*, 696 F. Supp. 364, 376 (N.D. Ill. 1988) (exhaustive review of historical purpose of Listings).

as a temporal proximity component. (ECF No. 14 at 10). Plaintiff argues that the ALJ discussed evidence under the Listing analysis outside of the context of Plaintiff's treatment and distorted the longitudinal picture of Plaintiff's impairment. Plaintiff argues the ALJ's analysis made it appear that Plaintiff had scattered listing elements met, but the reality was that Plaintiff's impairments reached listing severity, then briefly improved after surgery, and then worsened again to listing level severity. (ECF No. 15 at 1-2, ECF No. 13 at 11-12). Plaintiff argues Plaintiff's impairment was not of a mixed severity but was evidence of failed surgical intervention. (ECF No. 15 at 2).

The undersigned turns to whether there is evidence in the record which could support all of the Listing 1.04A elements.

First, Plaintiff must have a disorder of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture). Dr. Wilson noted Plaintiff was assessed with spinal stenosis of lumbar region, low back pain, and spondylolisthesis L5/S1 level.  (Tr. 274). This element is met.

Next, such disorder must result in compromise of a nerve root (including the cauda equina) or the spinal cord. In November and December 2016, imaging showed moderate bilateral L5-S1 exit narrowing with contact of the exiting L5 nerves. (Tr. 318, 320). There is evidence in the record that could meet this Listing element.

Further, there must be evidence of nerve root *compression* not just compromise. In October 2016, Plaintiff had anterior lumbar interbody fusion of L5-S1, which was later also noted as discketomy and decompression. (Tr. 358, 401, 404). On December 23, 2016, it was noted by Dr. Wilson, the prior surgeon, to consider open decompression. (Tr. 280). Assessment in April 2017 was no evidence of significant neural compression on MRI. (Tr. 359). While the ALJ discussed the 2017

records, the ALJ does not resolve compression prior to surgery or Dr. Wilson's comment of consider open decompression two months after surgery. The court does not weigh evidence in the first place; it is unclear whether the durational requirement of the impairment is met regarding this evidence. The ALJ should analyze this Listing element in light of the 2016 compression evidence in the first instance.

Then, did Plaintiff have neuroanatomic distribution of pain? One court has looked at neuroanatomic distribution of pain to be evidenced by references to radiculopathy. *Cowen v. Berryhill*, No. CIV-17-233-STE, 2018 WL 577222, at *4 (W.D. Okla. Jan. 26, 2018). In December 2016, Plaintiff had persistent radiculopathy after surgery. (Tr. 280). January 2017 notes showed recurrent radiculopathy. Plaintiff had radicular leg pain. (Tr. 277). Dr. Wilson's February 2017 assessment noted residual radiculopathy. (Tr. 274). Similar findings were noted for other visit dates in 2017 and 2018. (Tr. 284, 293, 313, 317, 353, 356, 391, 445, 455, 470, 478, 482, 490, 495, 499, 504, 508, 514, 517, 597). There is evidence in the record that could meet this Listing element.

Next, Plaintiff must show findings of limitation of motion of the spine. Upon multiple exams, active motion was limited or pain with motion. (Tr. 277, 280, 283, 290, 294, 297, 303, 308, 309, 312, 315, 334, 338, 350, 353, 356, 359, 399, 434, 441, 495, 511, 514, 516, 455, 458). There is evidence in the record that could meet this Listing element.

Plaintiff must show motor loss (atrophy with associated muscle weakness or muscle weakness). Plaintiff cites to exams of reduced strength in specific parts of arms, specific parts of feet, and specific parts of hips/knees. (Tr. 302, 308, 309, 390, 434, 470, 478, 486, 504). There is evidence in the record that could meet this Listing element.

Plaintiff must show sensory or reflex loss. There are numerous exams of diminished and

absent reflexes and diminished sensation in multiple locations in Plaintiff's arms, legs, feet, knee, and ankle. (Tr. 303, 308-309, 312, 316, 390, 442, 470, 474, 478, 486, 489, 498, 504, 508). There is evidence in the record that could meet this Listing element.

Finally, Plaintiff must show, positive straight-leg raising test (sitting and supine) if there is involvement of the lower back. Exams showed seated positive straight leg raising on right. (Tr. 303, 309, 312, 316, 399). Exams showed positive supine straight leg raising. (Tr. 334, 470, 474, 478, 486, 489, 498, 504, 508). There is evidence in the record that could meet this Listing element.

There is some evidence for all of the Listing criteria. Without a comparison by the ALJ of such evidence(that has not been selectively cherrypicked) of symptoms to the listed criteria, "it is simply impossible to tell whether there was substantial evidence to support the determination." *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). Without a thorough analysis by the ALJ of all of the relevant facts in the record as to Listing 1.04A, it is impossible to determine whether the ALJ's finding that Plaintiff's impairment does not meet a listing is based upon substantial evidence.

**Opinions: Dr. Wilson**

Plaintiff argues the ALJ failed to properly assess the opinions of Dr. Wilson.

The Social Security Administration's regulations provide that "[r]egardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(c). Generally, more weight is given to the opinions of examining physicians than nonexamining physicians. More weight is given to the opinions of treating physicians since they are more likely to be able to provide a detailed, longitudinal picture of a claimant's medical impairment. *See* 20 C.F.R. § 404.1527(c). The medical opinion of a treating physician is entitled to controlling weight, i.e., it must be adopted by the ALJ, if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques

and is not inconsistent with the other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(c)(2), SSR 96-2p, and *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence, it should be accorded significantly less weight." *Craig v. Chater*, 76 F.3d 585,590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro*, 270 F.3d at 178 (citing *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)).

In determining what weight to give the opinions of medical sources, the ALJ applies the factors in 20 C.F.R. § 404.1527(c)(1)-(6), which are: whether the source examined the claimant; whether the source has a treatment relationship with the claimant and, if so, the length of the relationship and the frequency of examination; the nature and extent of the treatment relationship; the supportability and consistency of the source's opinion with respect to all of the evidence of record; whether the source is a specialist; and, other relevant factors. *See* SSR 96-2p; *Hines v. Barnhart*, 453 Fd 559,563 (4th Cir. 2006). The ALJ considers the evidence in the record as a whole when analyzing Plaintiff's claims, as does this court when reviewing the ALJ's decision. *See Craig*, 76 F.3d at 595.

Even when a treating opinion is not entitled to controlling weight, "it does not follow that the ALJ ha[s] free reign to attach whatever weight to that opinion that he deem[s] fit." *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 385 (4th Cir. 2021). It must be "apparent from the ALJ's decision that he meaningfully considered each of the factors before deciding how much weight to give the opinion." *Id.* at *5. The Fourth Circuit Court of Appeals found where only the factors of supportability and consistency were discussed by the ALJ and other factors of length, frequency,

nature, and extent of treating relationship were ignored, it was error necessitating remand. *Id.* "20 C.F.R. § 404.1527(c) requires ALJs to consider *all* of the enumerated factors in deciding what weight to give a medical opinion." *Arakas v. Comm'r of Soc. Sec. Admin.*, 983 F.3d 83, 107 n.16 (emphasis in original).

On January 31, 2017, Dr. Wilson completed physical assessment form opinion. (Tr. 266-267). Plaintiff's symptoms from impairments were frequently severe enough to interfere with attention/concentration required to perform simple work-related tasks. Medication side effects were drowsiness. (Tr. 266). Plaintiff needed to recline or lie down in excess of normal workday breaks. (Tr. 266). Plaintiff could walk 1-2 blocks without rest or significant pain. Plaintiff could sit a total of 3 hours in a work day and stand/walk a total of 2 hours in a work day. Plaintiff needed unscheduled breaks every 1-2 hours for fifteen minutes. Plaintiff could occasionally lift/carry 10 pounds and never 20 pounds. Plaintiff had limitations on repetitive reaching, handling, or fingering with able to use arms reaching 10% of the workday. (Tr. 266). Plaintiff would be absent as a result of impairments 3-4 times a month. (Tr. 267). Plaintiff's impairments were reasonably consistent with the symptoms and functional limitations. (Tr. 267).

After giving partial weight to examining and non-examining consultants, the ALJ gave a lesser degree of partial weight to treating specialist Dr. Wilson:

> A lesser degree of partial weight goes to the treating source opinion evidence. In different statements, Dr. Wilson suggested that the claimant has unspecified "activity restrictions", that the claimant would be unable to work until after surgery, and that the claimant is limited to parttime sedentary tasks with numerous ancillary limitations such as a major loss of reaching abilities, and the need for extra breaks and absences (See e.g. Exhibits 1F; 2F/26, 46, 65). This opinion evidence is not completely without support. For example, Dr. Wilson had a long-term treatment relationship with the claimant, the State agency agreed with several of the same categories of limitation, and the combination of obesity and spine impairment is

14

reasonably consistent with a reduction to sedentary. However, this opinion evidence does not warrant greater weight. For example, greater exertional and manipulative abilities are more consistent with the totality of the record, including the nature and frequency of the benign or conservative evidence regarding sitting, strength, and upper extremity range of motion/dexterity signs (See e.g. Exhibits 2F/45 ("5/5 .. .4/5 ... "); 3F/2-3, 6-8; 5F/5; 7F/5, 9, 25; 8F/16). Dr. Wilson failed to explain these inconsistencies, or to explain his reasoning in general or to offer supportive evidence or citations to commensurate evidence in the record. These factors weigh against his conclusory, checkbox-style opinion. As for his comments about temporary inability to work, this is not entirely on-topic for the reasons discussed earlier -e.g., RFC does not equal the ability to work. Additionally, RFC contemplates long-term rather than short-term limitations.

(Tr. 23-24). First, the ALJ's analysis is internally contradictory and unclear as to the statement "greater exertional and manipulative abilities are more consistent with the totality of the record," and then citing "benign" evidence. (Tr. 24).

Plaintiff asserts the cited "benign" evidence does not actually show "benign" findings. (ECF No. 13 at 15). The following are the abnormal findings in the exam record evidence cited by the ALJ. Exhibit 2F/45 shows abnormal findings on exam of tenderness of paracervicals and trapezius, tenderness of the C6 spinous process, pain elicited by motion, 4/5 strength in flexion biceps and extension triceps, diminished reflex on biceps and triceps, decreased sensation of lateral leg, dorsum of the foot, sole of foot, and posterior leg, diminished ankle reflex and knee reflex, positive straight leg raising, antalgic gait, tenderness in lumbar spine, and 4/5 strength in ankle dorsiflexion tibialis anterior, great toe extension extensor hallucis longus, and plantar flexion gatrocnemius. (Tr. 312). Exhibit 3F/2-3, 6-8  showed diminished lumbar spine strength, decreased lumbar spine range of motion,  diminished muscular strength of hip, and decreased range of motion. (Tr. 334-335, 338-340). Exhibit 5F/5 showed antalgic gait. (Tr. 374). Exhibit 7F/5 showed tenderness, hypersensitive to light touch, and diffuse hypesthesia lower extremities. (Tr. 466). Exhibit 7F/9 shows antalgic gait,

15

trace edema, lumbosacral midline and paramidline tenderness, tenderness of the SI joint, pain with facet loading, 4/5 strength in hip flexion iliosoas, positive Patrick-Fabere test, and positive supine straight leg raising. (Tr. 470). Exhibit 7F/25 shows antalgic gait, trace edema, lumbosacral midline and paramidline tenderness, tenderness of the SI joint, pain with facet loading, 4/5 strength in hip flexion iliosoas, positive Patrick-Fabere test, and positive supine straight leg raising. (Tr. 485-486).

The ALJ purported to rely on objective exam findings that contained findings beyond "benign" to find Dr. Wilson's opinion was inconsistent with the record. The ALJ failed to build an accurate and logical bridge from the record objective evidence to the conclusion of "a lesser degree of partial weight" to Dr. Wilson's opinion. Where objective evidence is supportive, more weight may be given to a treating physician. *See* 20 C.F.R. § 404.1527(c)(2), SSR 96-2p. Dr. Wilson's opinion cannot be analyzed in a vacuum separate from supporting objective evidence.

The ALJ is obligated to consider all evidence, not just that which is helpful to his decision. *Gordon v. Schweiker*, 725 F.2d 231, 235-36 (4th Cir. 1984); *Murphy v. Bowen*, 810 F.2d 433, 437 (4th Cir. 1987). Resolving conflicting evidence with reasonable explanation is an exercise that falls within the ALJ's responsibility and is outside the court's scope of review. *See Mascio v. Colvin*, 780 F.3d 632, 637-40 (4th Cir. 2015). The ALJ did not properly evaluate the 20 C.F.R. § 404.1527(c) factors in relation to the evidence in the record. "The ALJ's failure to 'build an accurate and logical bridge from the evidence to his conclusion' constitutes reversible error." *Lewis v. Berryhill*, 858 F.3d 858, 868 (4th Cir. 2017)(internal citations omitted).

Based on the foregoing, the court can not find that the ALJ's decision as supported by substantial evidence and remand is appropriate.

### III. CONCLUSION

The court is constrained by its limited function under 42 U.S.C. § 405(g). Our function is to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)). As discussed above, the ALJ's decision is not based on substantial evidence.[5]

"We cannot determine if findings are unsupported by substantial evidence unless the Secretary explicitly indicates the weight given to all of the relevant evidence." *Gordon v. Schweiker*, 725 F.2d 231, 235–36 (4th Cir. 1984)(citing *Myers v. Califano*, 611 F.2d 980, 983 (4th Cir.1980); *Stawls v. Califano*, 596 F.2d 1209, 1213 (4th Cir.1979); *Arnold v. Secretary*, 567 F.2d 258, 259 (4th Cir.1977)). "The ALJ is not required to discuss every piece of evidence, but if he does not mention material evidence, the court cannot say h[er] determination was supported by substantial evidence." *Seabolt v. Barnhart*, 481 F. Supp. 2d 538, 548 (D.S.C. 2007)(citing *Arnold v. Sec'y*, 567 F.2d 258, 259 (4th Cir.1977) ("The courts ... face a difficult task in applying the substantial evidence test when the Secretary has not considered all relevant evidence. Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that h[er] decision is supported by substantial evidence approaches an abdication of the court's duty....")).

---

[5] Remand, rather than reversal, is required when the ALJ fails to explain his reasoning and there is ambivalence in the medical record, precluding a court from "meaningful review." *Radford v. Colvin*, 734 F.3d 288, 296 (4th Cir.2013).

It may well be that substantial evidence exists to support the Commissioner's decision in the instant case. The court cannot, however, conduct a proper review based on the record presented. Pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections 405(g) and 1338(c)(3), the Commissioner's decision is reversed pursuant to sentence four of 42 U.S.C. § 405(g) and this case is REMANDED to the Commissioner for further administrative action as set forth above.

s/Thomas E. Rogers, III

May 6, 2021                                        Thomas E. Rogers, III
Florence, South Carolina                    United States Magistrate Judge